**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5679-17T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

ISIDRO HERNANDEZ,

 Defendant.

_____

IN THE MATTER OF
KEVIN G. ROE, ESQ.,

 Appellant.

_____

   Argued October 8, 2019 – Decided October 24, 2019

   Before Judges Yannotti and Currier.

   On appeal from the Superior Court of New Jersey, Law Division, Camden County, Indictment No. 17-08-2082.

   Kevin G. Roe, appellant, argued the cause pro se.

   Respondent has not filed a brief.

PER CURIAM

This appeal arises from the June 22, 2018 summary contempt order entered against appellant imposing a monetary sanction. Because we find the judge erred by presiding over the contempt proceeding he initiated, we vacate the order and remand to the trial court.

In August 2017, a New York-licensed attorney, John L. Russo, entered an appearance on behalf of a defendant in a criminal case venued in Camden County. Russo and appellant had worked together on prior occasions and appellant agreed again to sponsor Russo's pro hac vice application. Over the next year, Russo appeared in court for the defendant several times, as did another New Jersey attorney.

Trial was scheduled for June 11, 2018. On June 5, the court advised Russo his pro hac vice application was deficient. Russo informed the trial judge in a phone conference that day that appellant would be trying the case. The judge told Russo appellant needed to enter an appearance.

A second telephone conference was set for Friday, June 8 to discuss the issues with Russo's application and appellant's appearance. Although appellant was apprised of the conference, he was in front of a judge in Bergen County at the appointed time and missed the phone call. Appellant left several voicemail messages on the judge's phone system after court hours, explaining his other

matter — a detention hearing — had gone longer than expected and apologizing for missing the conference. When appellant filed an appearance later that evening, he received discovery from the State for the first time.

On Monday, the trial date, neither appellant nor the defendant appeared for trial. It is undisputed that appellant had spoken with the judge's law clerk early that morning. Appellant contends he was waiting for a return call from court staff to schedule a phone conference in lieu of trial due to the delay in discovery production. The judge stated his staff told appellant he had to come to court.

Following the non-appearance, the trial judge issued an order to show cause to appellant under Rule 1:10-1 and a bench warrant for the defendant. The order to show cause, captioned under the criminal docket, required appellant to appear on June 18, 2018 "to show cause as to why he should not be held in contempt for willfully contumacious conduct. R. 1:10-1."

The criminal part judge who issued the order to show cause presided over the summary hearing. He began the proceeding by describing the events that had occurred over the previous week regarding the case. He acknowledged appellant had contacted the court several times late Friday afternoon explaining

his absence, and again on Monday morning, requesting a conference. He then stated:

> It's the [c]ourt's concern that this is willful contumacious conduct on the part of this attorney, first by not honoring the conference call that was agreed to under the circumstances that were certainly important, given the fact that there was a trial and also given the fact that there were several inquiries from chambers with regard to where are the trial documents.
>
> So none of that was supplied. And then, basically using my words, but it seems to fit, counsel blew off the trial date the following week.
>
> So, Mr. Roe, I'll hear from you.

Appellant explained he was before a judge in Bergen County on a detention hearing on June 8 that he assumed would be completed prior to the scheduled phone conference on the Camden case. He said he had a "panic attack" when he saw the phone ringing at the appointed time while he was on his feet in Hackensack. Appellant reiterated he left several messages on the judge's voicemail system when he finished his detention hearing. He also spoke with the prosecutor regarding the discovery issues and received discovery for the first time after 7:00 p.m. that Friday night.

In addressing the events of Monday, June 11, appellant explained he again called the judge, requesting a conference instead of trial due to the delay in

discovery production.  Appellant said the court staff stated they would "get back to [him]."  The judge disputed appellant's version of the Monday events and said his staff told appellant he had to come to court.  When the judge asked why the defendant did not appear on Monday for the scheduled trial, appellant stated Russo had told the defendant to be "on call" because they were awaiting a conference.

The judge then ruled, stating:

> [O]kay, well, I've heard enough.  Okay. I'm going to make a finding with regard to the order to show cause.
>
> I find that there has been a willful contumacious conduct on the part of this attorney, Mr. Roe.
>
> I find that he has entered an appearance [o]n behalf of Isidro Hernandez, the defendant.
>
> I find there was a clear problem that resulted in a scheduled telephone conference with the [c]ourt and counsel on that Friday, June 8th; clearly set down for 4:00.  There was no answer when the [c]ourt called.
>
> I'm satisfied that Mr. Roe had to know of the import of this call, especially given the fact that the lawyer who apparently was seeking to represent this defendant was not admitted to practice in the State of New Jersey.
>
> There was no answer to the call, there was no ability to even leave a message with Mr. Roe's office.

A-5679-17T4

The trial was scheduled for the following Monday. There was no appearance by Mr. Roe or his attorney.

I find that Mr. Roe, having entered an appearance [o]n behalf of the defendant was . . . under an obligation to appear consistent with a court notice, and was also [under] an obligation . . . to have his client appear as well.

To the contrary, I find that Mr. Roe is responsible for not only his willful failure to appear, notwithstanding there was a court scheduled trial, he also is responsible for essentially telling his defendant not to appear at that date resulting in a bench warrant being issued.

I am not at all persuaded and . . . as a matter of fact I find it to be weak, if not just essentially bordering on the ridiculous that Mr. Roe argues that he, potentially or supposedly in concert with the [p]rosecutor, determined that they did not have discovery such that the trial . . . was not ready to go and that then was sufficient reason not to appear in court in spite of the requirement to do so.

I find it ridiculous because the situation is . . . that if there was any failures with regard to production of any document or discovery to counsel [it] is because the individual who had represented the defendant initially, or at least appeared in court, was a Mr. Russo, who was not licensed to practice in the State of New Jersey and it seems to this [c]ourt that it would be entirely appropriate that the Prosecutor's Office would not deal with somebody who wasn't able to practice in the State of New Jersey.

6

The argument that Mr. Roe offers that he thought there was a pro hac vice motion granted or pending is without merit.

I find that Mr. Roe is in contempt of this [c]ourt and I will sanction [him] $1,000.

The judge issued a written decision and order on June 22, 2018, memorializing his ruling.

On appeal, appellant argues his conduct did not rise to the level of contempt. He contends his failure to appear for a telephone conference and for trial was not intentional and was not a deliberate affront to the court's authority. He further states he attempted to explain his absences at the summary hearing, but was denied a meaningful opportunity to be heard because it was clear the judge had already made his decision before hearing from appellant.

"The scope of appellate review of contempt cases is broad." In re Hinsinger, 180 N.J. Super. 491, 498 (App. Div. 1981). Our "task is to try the matter de novo on the record below, both as to the facts and the law." Ibid. (citations omitted). "The appellate court shall render such judgment and order for enforcement thereof as it deems just under the circumstances." R. 2:10-4.

Because the summary proceeding here was not conducted in accordance with governing Rules 1:10-1 and -2, thus foreclosing us from exercising a proper

review on this record, we are constrained to reverse and vacate the order and remand to the trial court for a hearing consistent with the rules' directives.

Rules 1:10-1 and -2 describe the proper procedures for summary contempt proceedings. Rule 1:10-1 permits a judge "conducting a judicial proceeding" to "adjudicate contempt summarily without an order to show cause" under certain enumerated conditions. All other summary proceedings to punish for contempt are governed by Rule 1:10-2.

Rule 1:10-2 states in pertinent part:

> (a) Institution of Proceedings. Every summary proceeding to punish for contempt other than proceedings under R. 1:10-1 shall be on notice and instituted only by the court upon an order for arrest or an order to show cause specifying the acts or omissions alleged to have been contumacious. The proceedings shall be captioned "In the Matter of _____ Charged with Contempt of Court."
>
> . . . .
>
> (c) Prosecution and Trial. A proceeding under R. 1:10-2 may be prosecuted on behalf of the court only by the Attorney General, the County Prosecutor of the county or, where the court for good cause designates an attorney, then by the attorney so designated. The matter shall not be heard by the judge who instituted the prosecution if the appearance of objectivity requires trial by another judge. Unless there is a right to a trial by jury, the court in its discretion may try the matter without a jury. If there is an adjudication of contempt,

the provisions of R. 1:10-1 as to stay of execution of sentence shall apply.

Here, the trial judge properly recognized the alleged contempt had not occurred during a judicial proceeding before him and, therefore, the issuance of an order to show cause was required. Although the pleading contained several deficiencies,[1] it was the material procedural errors that occurred during the hearing that require reversal of the judge's contempt order.

First, the judge prosecuted and presided over the hearing. Rule 1:10-2 mandates that the Attorney General, the County Prosecutor, or a designated attorney prosecute the contempt charge. Second, "[t]he matter shall not be heard by the judge who instituted the prosecution if the appearance of objectivity requires trial by another judge." R. 1:10-2(c).

"The procedural safeguards contained in Rule 1:10-2 are . . . intended to avoid the inherent arbitrariness of a summary contempt proceeding." Ippolito v. Ippolito, 443 N.J. Super. 1, 5 (App. Div. 2015); see also In re Buehrer, 50 N.J. 501, 514 (1967) (recognizing "the potential for arbitrariness" when a judge

---

[1] The order to show cause was improperly captioned under the criminal caption rather than in the form provided in the rule. The pleading also failed to specify the "acts or omissions" alleged to be contumacious as directed under the rule. We do not find, under these circumstances, either of these errors to be material to our conclusion.

acts as "complainant, prosecutor, judge and executioner" in contempt proceedings). "The utilization of all those safeguards ensures the 'appearance of objectivity.'" Ippolito, 443 N.J. Super. at 5.

Appellant contends the judge had decided to hold him in contempt "long before he ever heard [appellant's] explanations." The record of the proceeding permits a questioning of the appearance of objectivity. The judge opened the proceeding by advising of "the significant concern . . . the [c]ourt had with regard to the conduct of counsel. . . ."

After describing the court's version of the facts, the judge stated:

> It's the [c]ourt's concern that this is willful contumacious conduct on the part of this attorney, first by not honoring the conference call that was agreed to under circumstances that were certainly important given the fact that there was a trial and also given the fact that there were several inquiries from chambers with regard to where are the trial documents.
>
> So none of that was supplied. And then, basically using my words, but it seems to fit, counsel blew off the trial date the following week.

Therefore, it was only after the judge found appellant had exhibited contumacious conduct that he permitted appellant to speak and provide his version of events and an explanation of his actions. The acts of the complaining judge prosecuting and presiding over the summary hearing himself coupled with

his opening conclusion that appellant had acted contumaciously calls into question the objectivity of the proceedings. However frustrating the circumstances may have been, it was error not to comply with the procedural safeguards of Rule 1:10-2. Therefore, the order of contempt cannot stand.

We reiterate that our reversal is solely on procedural grounds. We have not made any judgment as to whether appellant's non-appearances for the phone conference and trial date amounted to contemptuous behavior under Rule 1:10-2. That determination will be made by a different judge on remand should an order to show cause issue.

We reverse and remand to the assignment judge to designate a different judge to preside over the contempt proceeding. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION